UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

RICHARD THOMAS                                                      PLAINTIFF

v.                                                    Civil No. 3:18-cv-00062-GHD-RP

LEE COHEN, *et al.*                                                DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Richard Thomas sues several individuals at the University of Mississippi, alleging, among other things, that they violated his due process rights when they terminated his employment. Those defendants, Noel Wilkins, Lee Cohen, Rebecca Bressler, Rick R. Gregory, Kirsten Dellinger, and Honey Ussery, have moved to dismiss [53] the complaint for failing to state a claim for relief. Thomas has responded. For the reasons set forth below the Court grants the motion in part and denies the motion in part.

## Background

### I. Factual Background

According to the complaint,[1] Thomas began working as a part-time faculty member at the University in 2006. Compl. [1] at 3, ¶ 10. In the spring semester of 2017, Thomas was teaching four-night classes at the University's DeSoto campus. *Id.* ¶ 11. A student in one of his classes began staying after class to speak to Thomas and eventually sent Thomas several unsolicited emails. *Id.* at 4, ¶¶ 12–15. Thomas and the student exchanged several emails, and Thomas requested that the student not speak to University officials about him. *Id.* ¶¶ 16–17.

Thomas's girlfriend viewed Thomas's emails and made several harassing calls to the student. *Id.* at 5–6, ¶¶ 25–27. Following these calls, Thomas both called and emailed the

---

[1] On a 12(b)(6) motion to dismiss, the Court must assume that all well-pleaded facts in the complaint are true. *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011)

student again, stating that they should no longer exchange emails and that they should establish a boundary for their relationship. *Id.* at 6–7, ¶¶ 29–33.

The student later learned that Thomas's girlfriend was a police officer at Northwest Community College and filed an incident report with the police department. *Id.* at 7–8, ¶¶ 35–36. The NWCC police informed Rick Gregory, the executive director of the University's DeSoto Campus, of the incident. *Id.* at 8, ¶ 37. Several days later, while the student and a classmate were walking toward their car in the parking lot after class, Thomas drove by them, in a manner they asserted made them uncomfortable. *Id.* at 9–10, ¶¶ 45, 48. The student then filed another incident report against Thomas. After making this report, Gregory interviewed the student with two other University employees present. The University initiated a Title IX investigation.

Honey Ussery, the University's Title IX Coordinator, performed this investigation. Ussery interviewed Thomas, the student, the classmate, Thomas's girlfriend, and Defendant Rick Gregory, the executive director of the DeSoto campus. Ussery Report [53-3] at 2–5.[2] Additionally, she reviewed the emails sent between Thomas and the student, as well as security video of the parking lot incident. *See* Ussery Report Ex. 1, 3 & 6. Ussery questioned Thomas both about the emails and the parking lot incident. *Id.* at 4–5. After the investigation, Ussery issued a report stating that Thomas's explanations did not comport with other evidence she found through the investigation, namely the emails she reviewed and a video of the parking lot incident. *Id.* at 6. She found that his actions had violated Title IX, and her report made several recommendations, including that he be removed from teaching classes in which the student was enrolled, and that his contract not be renewed at the end of the semester. *Id.* The report also informed Thomas that the findings of the report constituted grounds for termination and warned that the University might consider dismissing him as a result of the report. *Id.*

---

[2] In considering a 12(b)(6) motion, a court may rely on documents incorporated into the complaint by reference. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008)

After receiving the report, Thomas participated in a phone call with Defendant Lee Cohen, the Dean of the College of Liberal Arts, and Kirsten Dellinger, the Chair of the Sociology and Anthropology Department within the College of Liberal Arts. Compl. At 11, ¶ 57. Thomas alleges that during this call he was informed that his employment with the University was being terminated. Thomas asserts that he did not have an opportunity to object to Ussery's findings during this hearing. *Id.* at 11–12.

## II. Procedural Background

Thomas filed his first complaint in this suit against the University of Mississippi and the Board of Trustees of the Institutes of Higher Learning. Thomas amended his complaint to include Cohen, Dellinger, Ussery, Gregory, as well as Noel Wilkins, the Executive Vice Chancellor of the University, and Rebecca Bressler, the Director of Equal Opportunity and Regulatory Compliance. Thomas sued these persons in both their individual and official capacities.

The Court dismissed the University and the Board of Trustees as being immune from suit under the Eleventh Amendment. *Thomas v. Univ. of Mississippi*, No. 3:18-CV-00062-GHD-RP, 2018 WL 6613807, at *2–3 (N.D. Miss. Dec. 17, 2018). The Court also rejected the official capacity claims against the individual defendants under the Eleventh Amendment because Thomas had not pleaded appropriate injunctive relief against them to avail himself of the *Ex Parte Young* exception to Eleventh Amendment immunity. *Id.* at *3–4.

As to the claims against Defendants in their individual capacities, the Court found that Thomas's complaint constituted a shotgun pleading in that it was unclear which claims he asserted against which Defendants, and asserting all claims against all Defendants did not seem warranted by the facts of the complaint. *Id.* at *5. Thus, the Court ordered Thomas to file a second amended complaint specifically identifying which causes of action he asserted against which Defendants, and the facts supporting those causes. *Id.* at *6.

In his current complaint, Thomas again makes the nonspecific allegations that all the Defendants violated his procedural due process rights in both his continued employment and his reputation. To the extent he has identified specific claims against specific individuals, he claims that Cohen and Dellinger deprived him of a protected property interest without due process by terminating him without providing him a hearing and an opportunity to respond to the charges against him. He claims that Gregory violated his constitutionally protected liberty interest in his reputation by allowing two individuals to sit in on an interview he conducted with the student after she made the police report. Against Ussery, he alleges that she deprived him of a protected property and liberty interests by compiling a biased and inaccurate report. He also accuses Ussery of tortiously interfering with his employment contract with the University. He claims that Wilkins violated his constitutional rights for failing to uphold policies that would have prevented Thomas from being fired without a hearing, and he claims Bressler violated his rights by failing to supervise Ussery. It is unclear what specific constitutional rights Thomas claims Wilkins and Bressler violated. Additionally, Thomas alleges that all Defendants breached his contract with the University and that all Defendants violated his substantive due process rights. Thomas sues for money damages, and an injunction directing Defendants to reinstate him as an employee.

The Defendants have moved to dismiss, arguing that Thomas has failed to state a claim for relief and that they are entitled to qualified immunity.

### 12(b)(6) Motion to Dismiss Standard

When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)). "[A plaintiff's] complaint therefore 'must contain sufficient factual matter, accepted as true, to state a claim to relief

that is plausible on its face.'" *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)).

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S. Ct. 1937 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). "[P]laintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (internal quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.' " *Emesowum v. Hous. Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (quoting *Twombly*, 550 U.S. at 555, 570, 127 S. Ct. 1955).

## Analysis

### I. Injunctive Relief for Reinstatement

In his first amended complaint, Thomas sought an injunction against the individual Defendants ordering them to "reinstate" him to his position. The Court dismissed that claim because under state law only the Board of Trustees of the Institute of Higher Learning and the Chancellor of the University could rehire Thomas. *See* Miss. Code Ann. § 37-10-15 (giving IHL authority to contract with faculty); IHL Board of Trustees Policies and Bylaws § 401.0102, http://www.mississippi.edu/board/downloads/polic iesandbylaws.pdf (giving

IHL Commissioner and executive officer of university power to "make all appointments and promotions of faculty and staff).

Thomas now reasserts that relief. He argues that what he seeks—reinstatement—is distinct from rehiring. That is, however, a distinction without a difference. To "reinstate" someone who has previously been terminated, they must be hired again. As state law makes clear, no defendant here can hire Thomas. Accordingly, his claim for injunctive relief for reinstatement is dismissed.

## II. Procedural Due Process

### A. Liberty Interest

Thomas generally asserts that all Defendants deprived him of his protected liberty interest in his reputation without due process. More specifically, Thomas contends that Gregory violated his due process rights when he interviewed the student after she filed her police report and allowed two other individuals to sit in on the interview. Thomas also asserts a liberty interest claim against Ussery based upon her report.

"To establish a liberty interest, an employee must demonstrate that his governmental employer has brought false charges against him that 'might seriously damage his standing and associations in his community,' or that impose a 'stigma or other disability' that forecloses 'freedom to take advantage of other employment opportunities.' *Wilkerson v. Univ. of N. Texas*, 223 F. Supp. 3d 592, 605 (E.D. Tex. 2016) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 573, 92 S. Ct. 2701, 2707, 33 L. Ed. 2d 548 (1972)). To establish a constitutional violation of his protected liberty interest Thomas must plead facts that would show that: (1) he was terminated; (2) that stigmatizing charges were made against him in connection with the termination; (3) that the charges were false; (4) that he was not provided notice or an opportunity to be heard prior to his discharge; (5) that the charges were made public; (6) that he requested a hearing to clear his name; and

(7) that the employer refused his request for a hearing. *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000)

Defendants assert that Thomas has failed to state a claim because he has alleged no facts relating to the sixth and seventh elements—that he requested a name-clearing hearing and that any of the Defendants refused his request. Although Thomas's prior complaints contained allegations to an appeal process he undertook after his termination, his current complaint contains no facts about actions that occurred after he was fired beyond asserting that the charges within the Title IX report were "stigmatizing to his standing and reputation as a professor in the local academic community as well as his reputation nationally in his chosen field". Compl. ¶ 88.

However, "[n]either damage to reputation alone nor the stigma resulting from the discharge itself trigger the protections of due process. Rather, a liberty interest is infringed, and the right to notice and an opportunity to clear one's name arises, only when the employee is 'discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities." *Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006) (citing *White v. Thomas*, 660 F.2d 680, 684 (5th Cir.1981)). Thomas's complaint fails to plead enough injury to his reputation for his claim to succeed.

Moreover, Thomas fails to plead that Defendants deprived him of that interest by denying him a name-clearing hearing. Thomas cannot rely on his previous complaints, because amended complaints supersede prior complaints and render them of no legal effect, "unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading[s]." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). Thomas's second amended complaint does not specifically refer to or adopt prior complaints. It, therefore, fails to state a claim that Defendants deprived Thomas of his liberty interest.

The Court will not allow Thomas to amend his complaint to re-allege his post-termination actions. "Although leave to amend under Rule 15(a) is to be freely given, that

generous standard is tempered by the necessary power of a district court to manage a case." *Schiller v. Physicians Res. Grp. Inc.*, 342 F.3d 563, 566 (5th Cir. 2003). Thomas has now had three opportunities to allege facts necessary to support his claims. In the latest iteration, he has chosen to omit previously-pleaded facts that would have bolstered his position.[3] "At some point, a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986). Accordingly, Thomas's liberty interest claim is dismissed.

### B. Property Interest

Thomas asserts that Wilkins, Bressler, Cohen, Dellinger, and Ussery, deprived him of his property interest in his employment by terminating him without first providing him fair notice and an opportunity for a hearing.

Concerning Wilkins and Bressler, the Court finds that Thomas has failed to state a property deprivation claim against them. Thomas alleges no facts suggesting that either of Wilkins or Bressler was involved in the decision to terminate him. Instead, Thomas premises liability on the fact that Wilkins and Bressler's subordinates violated his constitutional rights, and that they did not prevent it.

However, it is axiomatic that there is no vicarious liability under § 1983. *See City of Canton v. Harris*, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). To establish a claim for relief, Thomas must allege facts that would show Wilkins and Bressler's conduct violated his rights. Here, Thomas's complaint fails to allege anything about Wilkins or Bressler's conduct beyond the fact that they failed to act. If Thomas claims that this constitutes a failure to train or supervise (which Thomas does not state), failure to train

---

[3] That is not to say that if Thomas included the post-termination allegations in this complaint, he would have sufficiently stated a claim. It would, however, have been better than to allege no facts at all.

claims must be established by conduct that is more than inept, erroneous, ineffective, or negligent. *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). Here, concerning Wilkins and Bressler, Thomas pleads no acts at all. Any property based due process claim against them must be dismissed.

Defendants first argue that Thomas lacked any identified property interest because he had no employment contract with the University at the time he was terminated.

"The Fourteenth Amendment, standing alone, does not create a protectable interest in continued public employment." *See Dearman v. Stone Cty. Sch. Dist.*, 832 F.3d 577, 583 (5th Cir. 2016) (citing *Roth*, 408 U.S. at 577, 92 S. Ct. 2701). "A government employee may, however, possess an interest in continued employment by operation of an employment contract or state law." *Id.*; *see Bishop v. Wood*, 426 U.S. 341, 344, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976) ("the sufficiency of the claim of entitlement must be decided by reference to state law"). "Where such an interest in continued employment exists, a public employer may not deprive an employee of continued employment without first providing due process of law." *Dearman*, 832 F.3d at 583.

"Under Mississippi law, an employee is considered an at-will employee unless an express or implied contract, state law, or local ordinance indicates otherwise." *Johnson v. City of Shelby, Miss.*, 642 F. App'x 380, 383 (5th Cir. 2015) (citing *Levens v. Campbell*, 733 So. 2d 753, 763 (Miss. 1999)). At-will employees have no property interest in continued employment. *Levens*, 733 So. 2d at 763.

Defendants assert that at the time of his termination, Thomas had no employment contract with the University. He was, they argue, an at-will employee with no property interest in continued employment with the University. Thomas, however, alleges in his complaint that an employment contract existed between himself and the University at the time he was terminated. He further claims that it was the practice of the University to offer renewed contracts over email and that he accepted that offer. "The existence of a contract and its terms are questions of fact to be resolved by the fact-finder, whether a jury or a judge in a

bench-trial." *Gandy v. Estate of Ford*, 17 So.3d 189, 192–93 (Miss. Ct. App. 2009). As long as the factual allegations of the complaint are plausible, the Court must accept them as true for the purposes of this motion. Here Thomas's claim to have an in-force contract for the spring 2017 semester is plausible. He was, after all, teaching four classes during that semester and had been under contract for previous semesters. Accordingly, the Court finds that Thomas has adequately pleaded a constitutionally protected property interest in his employment contract.

Moreover, "Mississippi courts have held that employee manuals become part of the employment contract, creating contract rights to which employers may be held, such as [the] right to the procedures outlined in the handbooks." *Whiting v. Univ. of S. Miss.*, 451 F.3d 339, 345 (5th Cir. 2006). And where "a property right to procedural protections existed under state law, those procedural guarantees constituted a property interest protected under due process." *Id.* Thomas alleges that the University's policies provide a non-tenured faculty member fired for-cause the same procedures afforded to terminated tenured faculty members. Thomas says that at a minimum those procedures grant the employee a right to a pre-termination hearing. Thus, at this stage, Thomas has sufficiently pleaded he possessed a protected interest in the remainder of his in-force contract and in receiving a hearing under the University's policies.

Defendants next assert that Thomas received more process than he was due. The nature of what process is owed can vary, but "[u]nder well-established federal law, the constitutional minimums for due process require that the final decision maker must hear and consider the employee's story before deciding whether to discharge the employee." *Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 465 (5th Cir. 2003). Thomas alleges that Cohen and Dellinger telephoned Thomas and informed him that he was terminated. It may eventually be shown that this telephone call, and the way it took place, was, in fact, constitutionally adequate. However, as pleaded in the complaint, Thomas has stated that he was not given a pre-termination hearing.

Defendants assert that Thomas cannot maintain a procedural due process claim because Thomas failed to avail himself of the University's post-termination procedures. That is incorrect. "[A]n individual cannot claim to have been unconstitutionally denied *pre*-deprivation process if he purposely chose not to utilize constitutionally adequate *pre*-deprivation procedures that were readily available to him." *Greene v. Greenwood Publ. Sch. Dist.*, 890 F.3d 240, 243 (5th Cir. 2018) (emphasis added). The "failure to pursue 'postdeprivation remedies does not affect his entitlement to predeprivation process.'" *Id.* (emphasis added) (citing *Chiles v. Morgan* 53, F.3d 1281, 1995 WL 295931 at *1–2 (5th Cir. 1995)). Thomas's failure to plead that he utilized a post-termination appeals process does not doom his claim that Cohen and Dellinger deprived him a right to hearing *before* his termination. Accordingly, concerning Cohen and Dellinger, the Court finds that Thomas has adequately stated that they violated his procedural due process rights.

As to Ussery, however, the Court finds Thomas has pleaded no procedural due process claim against her. Thomas's claims center around her investigation and report. Concerning Thomas's right in continued employment under the contract, Ussery did not decide to fire Thomas. Thus, she did not deprive him of his interest in his contract by ending it without a hearing. Without some indication that she possessed authority to force the decision makers to provide Thomas with a hearing or that she made the ultimate decision to terminate Thomas (and therefore could delay that decision until she gave Thomas a hearing) she cannot be liable when other individuals did not provide Thomas the procedure he may have been due. And with respect to any procedural protections Thomas may have been due under University policies as to the investigation itself, Thomas does not plead facts establishing the extent of those protections. Thus, he fails to plead any facts supporting an inference that Ussery deprived him of those protections through her investigation.

Defendants assert that Thomas cannot maintain a procedural due process claim because Thomas failed to avail himself of the University's post-termination procedures. That is incorrect. "[A]n individual cannot claim to have been unconstitutionally denied *pre*-deprivation process if he purposely chose not to utilize constitutionally adequate *pre*-deprivation procedures that were readily available to him." *Greene v. Greenwood Publ. Sch. Dist.*, 890 F.3d 240, 243 (5th Cir. 2018) (emphasis added). The "failure to pursue 'postdeprivation remedies does not affect his entitlement to predeprivation process.'" *Id.* (emphasis added) (citing *Chiles v. Morgan* 53, F.3d 1281, 1995 WL 295931 at *1–2 (5th Cir. 1995)). Thomas's failure to plead that he utilized a post-termination appeals process does not doom his claim that Cohen and Dellinger deprived him a right to hearing *before* his termination. Accordingly, concerning Cohen and Dellinger, the Court finds that Thomas has adequately stated that they violated his procedural due process rights.

As to Ussery, however, the Court finds Thomas has pleaded no procedural due process claim against her. Thomas's claims center around her investigation and report. Concerning Thomas's right in continued employment under the contract, Ussery did not decide to fire Thomas. Thus, she did not deprive him of his interest in his contract by ending it without a hearing. Without some indication that she possessed authority to force the decision makers to provide Thomas with a hearing or that she made the ultimate decision to terminate Thomas (and therefore could delay that decision until she gave Thomas a hearing) she cannot be liable when other individuals did not provide Thomas the procedure he may have been due. And with respect to any procedural protections Thomas may have been due under University policies as to the investigation itself, Thomas does not plead facts establishing the extent of those protections. Thus, he fails to plead any facts supporting an inference that Ussery deprived him of those protections through her investigation.

### III. Substantive Due Process

Thomas asserts that all Defendants violated his substantive due process rights. "Substantive due process 'bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." *Marco Outdoor Advert., Inc. v. Reg'l Transit Auth.*, 489 F.3d 669, 673 n.3 (5th Cir. 2007) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct 975, 108 L.Ed.2d 100 (1990)). "To state a viable substantive due process claim, 'the plaintiff must demonstrate that the state official acted with culpability beyond mere negligence.'" *Id.* (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 325 (5th Cir. 2002). Only conduct that is so egregious that it "shocks the conscience" is "arbitrary in the constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998)

Thomas fails to allege facts regarding Defendants' conduct that rises to that level. For most of the Defendants, he alleges few facts of their conduct at all. He alleges only that Wilkins and Bressler failed to supervise University employees and ensure that proper procedures were followed. He only alleges that Gregory interviewed the student and permitted two university employees to sit in on the interview. He alleges only that Cohen and Dellinger reviewed Ussery's report and then terminated Thomas over the phone. None of that conduct is conscience shocking. *Id.* (conduct that "shocks the conscience" is that which "violates the 'decencies of civilized conduct'") (quoting *Rochin v. California*, 342 U.S. 165, 173, 72. S. Ct. 205, 96 L. Ed 183 (1952)).

Thomas makes the most detailed allegations against Ussery. He alleges several examples of information that Ussery included in her report that purportedly show that Ussery was biased. But all that Thomas really alleges is that Ussery came to conclusions about the evidence she found, and that Thomas disagrees with those conclusions. Nothing about these allegations supports an inference that Ussery deliberately lied or acted with malice towards Thomas. Thomas fails to plead conduct that shows Ussery violated his substantive due process rights.

## IV. Qualified Immunity

Defendants assert that they are each entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc). "[A] plaintiff seeking to defeat qualified immunity must show: '(1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct.'" *Id.* at 371 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011)). The plaintiff's complaint must allege facts that, if true, demonstrate that the defendant violated his rights by acting in a way that he or she should have known was unlawful. *See Behrens v. Pelletier*, 516 U.S. 299, 309, 116 S. Ct. 834, 133 L. Ed. 2d 773 (1996). "Dismissal is warranted only if it appears that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Morin v. Caire*, 77 F.3d 116, 120 (5th Cir. 1996).

The Court has determined that Thomas has stated only one valid constitutional claim: that Cohen and Dellinger violated his procedural due process rights by terminating him without first affording him an adequate hearing. Thus, the Court assesses whether they, and not the other defendants, are entitled to qualified immunity. At the time of Thomas's termination, it was clearly established that public employees employed under a contract had a protected property interest in their employment and that they could not be terminated without first giving them notice and the opportunity to respond to the charges against them. *See Loudermill*, 470 U.S. at 546, 105 S. Ct. 1487; *Roth*, 408 U.S. 564, at 569–70; 92 S. Ct. 2701; *Perry v. Sindermann*, 408 U.S. 593, 599, 92 S. Ct. 2694, 33 L. Ed. 2d 570 (1972). Thomas pleads that he did not have that opportunity to respond. Therefore, Cohen and Dellinger are not entitled to qualified immunity at this stage.

## V. Tortious Interference

Thomas asserts that Ussery tortiously interfered with his employment contract with the University "by her heavy-handed and biased investigation and her rush to judgment...." Compl. ¶ 110. Under Mississippi law, to establish a claim for tortious interference with a contract a plaint if must show that "(1) that the [defendant's acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted." *Cenac v. Murry,* 609 So.2d 1257, 1268–69 (Miss. 1992). Additionally, "[t]he plaintiff must prove that an enforceable obligation existed between the plaintiff and a third party," and that "the contract would have been performed but for the alleged interference." *Par Indus., Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1998)

"[C]onduct related to a legitimate, employment-related objective constitutes justifiable acts, which cannot "give rise to an inference of malice." *Progressive Cas. Ins. v. All Care, Inc.*, 914 So. 2d 214, 219 (Miss. Ct. App. 2005) (quoting *Hopewell Enter., Inc. v. Trustmark,* 680 So.2d 812, 818–19 (Miss. 1996). Ussery's actions here arose out of the University's duties under Title IX to investigate the student's allegations. They were, therefore, related to a legitimate, employment-related objective, and cannot constitute tortious interference. That claim is dismissed.

## VI. Breach of Contract

Thomas also sues Defendants for breach of contract. Under Mississippi law, to establish a breach of contract, the plaintiff must show that (1) a valid and binding contract existed; and (2) the defendant breached it. *Bus. Commc'ns, Inc. v. Banks,* 90 So.3d 1221, 1224–25 (Miss.2012). Here, Thomas does not allege that a contract existed between him and any Defendant. Thomas concedes that no such contract exists. The Court previously questioned how Thomas could bring a breach of contract action against Defendants.

*Thomas*, 2018 WL 6613807, at * 5 fn. 3 ("For example, Thomas appears to assert a breach of contract claim against all Defendants, when it is clear that if he has a contract, it would be only with IHL . . . .") Thomas asserts that a claim against the individuals is proper because the University acts through its employees. That is irrelevant. The Defendants cannot breach contractual obligations they themselves do not owe. Thomas's breach of contract claim is patently without merit.

## Conclusion

For these reasons, the Court finds that Thomas has stated but one claim for relief: that Cohen and Dellinger deprived him of property without due process by terminating him before giving him an adequate hearing. Thomas has failed to state any other claim. Therefore, the Defendants' motion to dismiss is granted in part and denied in part.

SO ORDERED, this, the 16th day of May 2019.

/s/ Glen H. Davidson
SENIOR U.S. DISTRICT JUDGE